UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERNESTO MAGDENI FUNES-MURILLO,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, *et al.*,<br>Respondents. | Case No. 1:26-cv-04571 (VC)<br>**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 12 |

Before the Court is Petitioner Hernesto Magdeni Funes-Murillo's Amended Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241. Petitioner argues that his seven months of detention by U.S. Immigration and Customs Enforcement ("ICE") violates his Fifth Amendment due process rights, the Immigration and Nationality Act ("INA"), and the Administrative Procedures Act ("APA"). For the reasons that follow, the Court grants the petition as to his due process claim and orders Petitioner's immediate release.

## I. BACKGROUND

Based on the parties' submissions, the Court finds the following facts. Petitioner is a citizen of Honduras who entered the United States after crossing the Texas border on November 13, 2021 as a minor. Dkt. No. 12 ¶ 73. United States Customs and Border Protection took him into custody that same day. *Id*. He was subsequently transferred to the Office of Refugee Resettlement ("ORR"), and then was released from custody to his father. *Id*.; Dkt. No. 14-1 at 3. In doing so, the immigration officials necessarily determined that Petitioner did not present a security risk or a risk of absconding. *See* 8 C.F.R. § 212.5(b)(3) ("The parole of [minor aliens]

who have been or are detained in accordance with § 235.3(b) or (c) of this chapter would generally be justified only on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit,' provided the aliens present neither a security risk nor a risk of absconding.").

Following his release, Petitioner applied for asylum and began living with his family in Florida where, prior to his detention, he was working to help support his family financially. Dkt. No. 12 ¶ 76; Dkt. No. 12-3 at 14–26. He further claims to have no criminal history—a contention which Respondents do not dispute. Dkt. No. 12 ¶ 76; Dkt. No. 14-1 at 3 (DHS documents showing Petitioner has a "Negative" criminal history).

On February 2, 2026, Petitioner was pulled over by Florida Highway Patrol. Dkt. No. 14-1 at 3. After inquiring into Petitioner's immigration status, the officers determined that Petitioner did not have legal immigration status and transferred him to ICE custody. *Id*. ICE served Petitioner with a Notice to Appear charging him as inadmissible under INA § 212(a)(6)(A)(i) and INA § 212(a)(7)(A)(i)(I) and placing him in removal proceedings that same day. *Id*. at 6–9.

Petitioner subsequently filed a habeas petition in the Middle District of Florida, as he was initially detained in that district. *See Funes-Murillo v. Warden Mathew Mordant*, Case No. 2:26-CV-1267-KCD-NPM. The court entered an order on the petition on May 15, 2026 in which it ruled that Petitioner's mandatory detention without the opportunity for release on bond pursuant to 8 U.S.C. § 1225(b)(2)(A) violated the Immigration and Nationality Act ("INA"). *Funes-Murillo*, Case No. 2:26-CV-1267-KCD-NPM, Dkt. No. 15 at 2. The court explained "that aliens who are stopped at the border and released into the country, like Funes-Murillo, fall under 8 U.S.C. § 1226 and are entitled to a bond hearing." *Id*. In so holding, the court declined to grant Petitioner's immediate release, reasoning that "[Section] 1226(a)(1) grants the executive branch discretion to determine whether to detain or release a noncitizen who is facing removal proceedings." *Id*. (quoting *Hulke v. Schmidt*, 572 F. Supp. 3d 593, 596 (E.D. Wis. 2021)). It further declined to consider Petitioner's Fifth Amendment due process claim, explaining that "such claims are not addressed 'given that the Court [is granting] the relief [he is entitled to]

based on its interpretation of the applicability of § 1226(a).'" *Id*. at 2–3 (quoting *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *8 (E.D. Mich. Sept. 9, 2025)). However, the court noted that "[i]f the Government does not provide Petitioner with a bond hearing as ordered or he remains in custody, he can renew any other claims in a subsequent suit." *Id*. at 3.

Petitioner was provided with a bond hearing pursuant to 8 U.S.C. § 1226(a) on May 29, 2026. *See* Dkt. No. 12-6 at 1. The Immigration Judge denied release on bond, placing the burden on Petitioner to show that he was neither a flight risk nor danger to the community. *Id*. In denying release, the IJ determined that Petitioner was "a significant flight risk such that no amount of bond or conditions would secure his future court appearances[,]" reasoning that: "[o]ther than Petitioner's [United States Citizen] sister/sponsor, [Petitioner] has no immediate family members where there is a visa immediately available[,]" "that [Petitioner had] not presented a stable residential or employment history[,]" and that the likelihood of success on Petitioner's asylum application was "speculative." *Id*.

## II. DISCUSSION

Petitioner argues that he is entitled to release from custody because the bond hearing he received "did not involve an individualized assessment of whether Petitioner presented a flight risk *on or prior to* his re-arrest and re-detention on February 2, 2026," thus, violating his procedural due process rights under the Fifth Amendment. Dkt. No. 12 ¶ 95. He further argues that his re-detention without a showing of changed circumstances, coupled with the "sham" bond hearing he later received violated both the Administrative Procedure Act ("APA") and the INA. *Id*. ¶¶ 97–105. Respondents oppose relief, arguing that "Petitioner received the due process the District Court stated he was entitled to—a bond hearing," and that he must exhaust his administrative remedies by appealing the bond denial to the Board of Immigration Appeals ("BIA") before seeking habeas relief. Dkt. No. 14 at 2–3. The Court first addresses exhaustion before turning to the merits of Petitioner's due process claim.

### A. Exhaustion

"On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional

requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). As the Ninth Circuit has stated:

> Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). Even if these factors weigh in favor of requiring exhaustion, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

To the extent Petitioner challenges the IJ's flight risk finding, the *Puga* factors favor requiring exhaustion. However, an exception applies to Petitioner's due process claim. "[C]ontrary to Respondents' contention that Petitioner has merely challenged the [immigration judge's] 'erroneous factual determinations and evidentiary errors,' [citation] the basis for the Petition is a claimed deprivation of constitutional due process." *Rufino Ligario Hernandez v. Mark Wayne Mullin, et al.*, No. 5:26-CV-00585-JAK-ADS, 2026 WL 846037, at * 7–8 (C.D. Cal. Mar. 24, 2026) (excusing prudential administrative exhaustion as futile). Specifically, that Petitioner was entitled to process *before* he was arrested and detained to determine whether any changed circumstances since his prior release from immigration custody necessitated his arrest. *See* Dkt. No. 12 ¶¶ 76–77, 95. Petitioner further contends that the IJ imposed the incorrect burden of proof at the hearing, further compounding the due process violation. *Id*. ¶ 94. "Because this claim is not within the jurisdiction of the [Board of Immigration Appeals], requiring administrative exhaustion would be futile." *Rufino Ligario Hernandez*, 2026 WL 846037, at *8; *Yero v. U.S Gen. Att'y*, No. 1:26-CV-04312-DAD-JDP, 2026 WL 1707102, at *3 (E.D. Cal. June 12, 2026) (excusing exhaustion requirement where due process claim alleged Petitioner was

entitled to notice and pre-deprivation process prior to his re-arrest by ICE).

Accordingly, the Court turns next to the merits of Petitioner's claim that the Government was required to make a showing of changed circumstances prior to arresting and re-detaining Petitioner—something that did not occur prior to Petitioner's arrest or at the bond hearing he received in May 2026.

**B. Due Process**

Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

**1. Liberty Interest**

The statute governing the release of minors to adult sponsors located in the interior of the United States provides that in making custody determinations the ORR should consider "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). The ORR's release of Petitioner in 2021 reflects a determination that he was not a flight risk or danger to the community. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176, 1178 (N.D. Cal. 2017) ("[Immigration officials] may release the minor to a "sponsor" ... so long as the minor is not dangerous .... Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." (citing 8 U.S.C. § 1232(c)(2)(A)), *aff'd* 905 F.3d 1137 (9th Cir. 2018). "Thus, DHS may generally not re-arrest a previously released noncitizen absent a change in circumstances." *Singh v. Noem*, No. 26-CV-0932-GPC-MMP, 2026 WL 468159, at *2 (S.D. Cal. Feb. 18, 2026).

Numerous courts have found that where an unaccompanied minor is released by the ORR to a sponsor, he obtains a liberty interest in his continued freedom, even after reaching adulthood. *See, e.g.*, *Sergio S.M. v. Noem*, No. 1:25-CV-01973-KES-HBK (HC), 2025 WL

3768206, at *3 (E.D. Cal. Dec. 31, 2025); *R.D.T.M.*, 2025 WL 2686866, *4–5; *F.S.S.M. v. Wofford*, No. 1:25-CV-01518-TLN-AC, 2025 WL 3526671, at *3 (E.D. Cal. Dec. 9, 2025); *P.A.H.E. v. Noem*, No. 1:26-CV-01164-DJC-JDP, 2026 WL 451662, at *2 (E.D. Cal. Feb. 17, 2026). Immigration officials' release of Petitioner in 2021 allowed him to live at liberty with his family for nearly five years. Under these circumstances, the Court finds that Petitioner has a protected liberty interest in his release such that the Government could only arrest Petitioner upon a showing of changed circumstances. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

**2. *Mathews* Factors**

As Petitioner has a protected liberty interest in his continued freedom, the Court must next determine what process is due before the Government may terminate his liberty. Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh in Petitioner's favor. First, Petitioner has a significant private interest in his continued release from custody. Petitioner was released by the Government and living at liberty for nearly five years prior to his re-detention. During that time, Petitioner applied for asylum and withholding of removal, began living with his family, and worked to support them financially.

Second, the risk of erroneous deprivation is high when, as here, Petitioner's release was revoked without any showing of changed circumstances at the time of his arrest by ICE. *See Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025). "While the Ninth Circuit concluded that a post-detention bond hearing generally satisfies due process for the detention of a noncitizen pending removal proceedings pursuant to 8 U.S.C. § 1226(a), it did not foreclose 'as-applied due process challenges to § 1226(a).'" *Perez Bueno v. Janecka*, No. 5:25-cv-03376-CAS-BFM, 2026 WL 309934, at *3 (C.D. Cal. Feb. 5, 2026) (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022)). At Petitioner's belated bond hearing in May 2026, the IJ did not make any finding that circumstances had changed since the Government's initial decision to release him. Indeed, nothing in the record supports the conclusion that Petitioner had become a flight risk or danger to the community since his initial release from custody by the ORR and his re-detention: he has no criminal history and there is no evidence that he has failed to abide any ICE directives. As civil immigration detention is "nonpunitive in purpose and effect[,]" it is only justified when a noncitizen presents a risk of flight or danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Where the Government "fails to provide any sort of notice regarding the reason for a person's detention, and fails to provide a pre-deprivation hearing" demonstrating changed circumstances since the individual's prior detention and release, "the risk of erroneous deprivation is high." *Anderson v. Chernut*, No. 1:26-CV-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (finding due process violation where Government failed to provide *pre*-deprivation process, even though Petitioner had received a belated bond hearing).

Finally, "the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar*, 2025 WL 3063629, at *5. Since respondents did not engage with Petitioner's due process arguments, they have not provided the Court with any information regarding the burden, if any, that additional process may place on the Government. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). "If the government wishes to re-arrest

[Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)

## III. CONCLUSION AND ORDER

Accordingly, the Petition is GRANTED as to Petitioner's due process claim. IT IS HEREBY ORDERED that:

1. Respondents immediately release Petitioner from their custody.

2. The Government shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation and/or custody hearing.

3. If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter, at which the Government must show by clear and convincing evidence that he is a flight risk or danger to the community.

4. This Order does not address the circumstances in which the Government may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

5. The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: September 30, 2026

VINCE CHHABRIA
United States District Judge